UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

*THE MARK LAW FIRM, LLC*
403 King George Road
Suite 201
Basking Ridge, New Jersey 07920
Jamison M. Mark, Esq. ID#: 042392000
Attorney for Plaintiff, Thomas Mathew

| | |
|---|---|
| **THOMAS MATHEW,**<br><br>Plaintiff,<br><br>v.<br><br>**MEGAN J. BRENNAN**, Postmaster General *(in her official capacity), and* **UNITED STATES POSTAL SERVICE,**<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Thomas Mathew, by and through his attorneys THE MARK LAW FIRM, LLC, by way of Complaint against Defendant, Megan J. Brennan and the United States Postal Service, does hereby state:

### PARTIES

1. Thomas Mathew (hereinafter "Plaintiff" or "Mr. Mathew") is a resident of the Township of Bergenfield, Bergen County, State of New Jersey, and is at all times relevant an employee of the United States Postal Service.

2. Megan J. Brennan is the Postmaster General of the United States Postal Service, and is being named in her official capacity to attach jurisdiction to the United States Postal Service.

3. United States Postal Service, and its members (hereinafter "Defendant USPS") have a principal place of business within the State of New Jersey, is a governmental entity organized under the laws of the United States Constitution, and was Plaintiff's employer at all times relevant.

## JURISDICTION AND VENUE

4. The jurisdiction of the Court over this controversy is invoked pursuant to 42 U.S.C. § 12117 and 28 U.S.C. §§ 1331, 1339, 1343(a)(4).

5. Both Plaintiff is a citizens of New Jersey, as that term is defined by 28 U.S.C. §1391(c). Accordingly, venue lies in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1391(b).

6. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. § 12117.

7. Supplemental Jurisdiction and ancillary relief are appropriate and permitted to be filed with this Court pursuant to 28 U.S.C § 1367 for all state law claims.

8. Prior to filing this civil action, on June 12, 2015, Plaintiff filed a written charge under oath asserting disability, age and national origin and race discrimination with the United States Postal Service.

9. The Notice of Final Action related to Plaintiff's June 12, 2015 charge was issued on January 5, 2017. Plaintiff was provided Notice of his right to file a civil action related to same and had filed this Civil Action within 90 days of receipt of the Notice.

10. Prior to filing this civil action, on July 19, 2016, Plaintiff filed a written charge under oath asserting disability, and age discrimination, and retaliation with the United States Postal Service.

11. The Notice of Final Action related to Plaintiff's July 19, 2016 charge was issued on December 21, 2016. Plaintiff was provided Notice of his right to file a civil action related to same and has filed this Civil Action within 90 days of receipt of the Notice.

## FACTS

12. Plaintiff Thomas Mathew is a City Carrier 1 at the Washington Township Post Office.

13. Mr. Mathew's date of birth is September 13, 1957, making his age over 40 years of age, and Mr. Mathew is of the Asian (Indian) race, and was born in India. .

14. On December 9, 2013 Mr. Mathew suffered a work-related injury, which resulted in the contusion of the left knee, abrasion of the left knew, lumbar disc protrusion at L4-L5 without myelopathy and a sprain of back lumbar region.

15. Mr. Mathew's injury limited major life activities in performing the manual tasks of walking, climbing stairs, standing for prolonged periods, lifting and bending.

16. As a part of Mr. Mathew's role as a City Carrier 1, he was to case flat mail and small packages, pull down the mail and place in a tray, load the truck with large packages, drive the loaded truck to the assigned route and start delivering the mail and packages.

17. Von Rudenborg was made aware of Mr. Mathew's medical condition on December 10, 2013, following Mr. Mathew's submission of medical records related to his work-injury.

18. Following Mr. Mathew's injury, he was placed on medical leave until January 13, 2014.

19. Upon Mr. Mathew's return, he was placed on various forms of light duty by his physician.

20. Each time Mr. Mathew requested an accommodation per his physician's instructions, Von Rudenborg refused to accommodate Mr. Mathew.

21. For example, on January 7, 2014, Mr. Mathew submitted his request for restricted duty, to begin upon his return to work. Mr. Mathew was prohibited from lifting over five (5) pounds, or bending.

22. Von Rudenborg advised Mr. Mathew that there was no position available that allowed for lifting of five (5) pounds or less. As such, Mr. Mathew's leave was extended.

23. On January 31, 2014, Mr. Mathew again submitted a revised accommodation request, that he could not lift over 15 pounds.

24. Von Rudenborg again prohibited Mr. Mathew, from returning to work with this lifting limitation.

25. On February 18, 2014, Mr. Mathew submitted another light duty form, advising that he could engage in "lifting up to 20 lbs. Maximum and/or carry 10 lbs. frequently. May walk or stand as needed. May push/pull with arms along &/or legs & feet."

26. It was not until March 19, 2014 that Von Rudenborg agreed to place Mr. Mathew on light duty.

27. Despite the fact that Von Rudenborg failed to issue a formal modified duty letter, Mr. Mathew was permitted to work a for a longer period of time to complete an eight hour shift.

28. Mr. Mathew was also allowed to carry packages individually rather than carrying them in his satchel due to his weight restriction.

29. Mr. Mathew was also permitted to split his loop into two loops to accommodate his weight restriction.

30. Despite these accommodations, Mr. Mathew was consistently pressured by Von Rudenborg and Marshall to finish his loop quicker than he physically could manage.

31. In fact, on July 16, 2014, Von Rudenborg walked with Mr. Mathew along his route and determined that Mr. Mathew did not walk fast enough and took too much time to climb stairs.

32. As a result, on July 17, 2014, Mr. Mathew was placed on reduced hours. Mr. Mathew was required to case his route and then was sent home after the 1 to 2 hours it took to case his route.

33. Ample work was available to allow Mr. Mathew to work for a full eight hour shift on light duty, however, Von Rudenborg refused to provide Mr. Mathews with the available work.

34. Mr. Mathews was only compensated for 8 to 10 hours a week rather than his standard 40 hour shift.

35. During this time while Mr. Mathews was only permitted to case his route, he was harassed on a daily basis by Von Rudenborg and Marshall to work faster, despite the fact that both Defendant knew of Mr. Mathews' physical limitations.

36. Furthermore, on September 9, 2014, Von Rudenborg wrote to Mr. Mathew and advised that there was no record of a work-related incident to cause his work injury, thus calling into question the validity of Mr. Mathew's medical condition.

37. Due to the severity of his injuries, Mr. Mathew received an epidural injection on February 19, 2015, and was placed on medical leave for 10 days.

38. On March 16, 2015, following Mr. Mathew's leave, Mr. Mathew's physician placed Mr. Mathew on additional limitations.

39. Mr. Mathew was prohibited from lifting anything heavier on a gallon of milk until March 19, 2015.

40. When Mr. Mathew returned to work that day, he provided Von Rudenborg with his doctor's note, and was immediately sent home, rather than being offered the opportunity to case the mail.

41. On March 19, 2015, Mr. Mathew's physician advised that he could return to work on light duty on a full time basis, but with lifting limitations.

42. On March 20, 2015, Von Rudenborg issued a modified duty letter which allowed him to case and deliver mail for a maximum of eight hours, with lifting restrictions with a maximum of 20 lbs.

43. Mr. Mathews' doctor noted that climbing was "tolerated."

44. Mr. Mathews must climb stairs one foot at a time due to his injury.

45. Within the modified duty form, Von Rudenborg stated that "Carrier must walk up & down stairs like a normal letter carrier not one foot at a time from step to step."

46. Von Rudenborg and Marshall continued to watch Mr. Mathews on a daily basis until he left his station to deliver the mail.

47. Mr. Mathew was repeatedly chastised by Von Rudenborg and Marshall that he was not moving fast enough.

48. On May 8, 2015, Mr. Mathew received another epidural injection.

49. On May 15, 2015, Mr. Mathew was called in to Von Rudenborg's office and was chastised for not working fast enough. Specifically, Von Rudenborg advised that Mr. Mathew's numbers were "not up to par" and that he was "calling HR [human resources] because you're not being faithful to your agreement. You are not living up to your end of the agreement."

50. Mr. Mathew advised that he was moving as quickly as possible.

51. Von Rudenborg responded, "You haven't sweated once out there delivering mail" implying that Mr. Mathew was simply not trying hard enough.

52. On May 29, 2015, Mr. Mathew came into work with an updated note from his doctor requesting an accommodation of an 8 hour work day with the same lifting accommodations.

53. When Von Rudenborg received the doctor's note, he advised that "there is no work for Thomas Mathew" and immediately asked Mr. Mathew to leave.

54. Marshall witnessed the interaction and was asked to put the order for Mr. Mathew to leave in writing. She refused to do so.

55. Mr. Mathew was so humiliated that he did not report for work on May 30, 2015.

56. Marshall ordered Mr. Mathew to report to work on June 1, 2015, which Mr. Mathew did.

57. On June 1, 2015, when Mr. Mathew reported for work, he was provided an offer of modified assignment and was sent home after working for only two hours.

58. On June 2, 2015, Mr. Mathew was prohibited from working until he signed the modified assignment offer.

59. Mr. Mathew responded by requesting guidance from human resources, but instead Von Rudenborg ordered him to clock out. Mr. Mathew complied.

60. On June 12, 2015, Mr. Mathew filed a charge with the office of EEO claiming disability, race, national origin and age discrimination.

61. EEO finished the initial investigation of Mr. Mathew's charge on or about October 27, 2015.

62. Following the conclusion of the investigation, Mr. Mathew began facing additional harassment from his supervisors, Von Rudenborg and Marshall.

63. Mr. Mathew also began facing harassing behavior and a pattern of unfound discipline from supervisor Raina Tapia.

64. On March 10, 2016, Von Rudenborg called Mr. Mathew that he was a disgrace to the postal service and that he was doing all he could to get Mr. Mathew terminated.

65. On March 18, 2016, Mr. Mathew was called in for a pre-disciplinary interview in which he was chastised for only walking 62 steps per minute, not fingering mail, putting one letter at a time in the mailbox and not completing his route.

66. Mr. Mathew advised that he could not walk any faster due to his disability.

67. Mr. Mathew also advised that he did not finger mail while crossing the street as it posed a safety hazard. He also advised that he could not finger the mail while going up and down stairs because he had to be extra careful to maintain steadiness due to his disability.

68. Finally, Mr. Mathew advised that his medical restriction limits him to a maximum of eight hours, with a 5 minute break every hour, and that he could not finish his route in that amount of time.

69. Mr. Mathew never placed one letter in the mailbox at a time, and wholeheartedly denied this allegation.

70. On March 21, 2016, Surita and Von Rudenborg called Mr. Mathew in for a pre-disciplinary interview.

71. Surita and Von Rudenborg questioned Mr. Mathew about why he returned two loops of mail when he was instructed to finish the route.

72. Mr. Mathew responded by advising that he was in paid and was limited to an 8 hour time restriction by his physician.

73. Surita and Von Rudenborg advised Mr. Mathew that he was 40 minutes over the amount of time he should have spent in the office casing mail, and one hour and three minutes over the amount of time he should have spent delivering mail.

74. Mr. Mathews again advised that he moves slower due to his age, injuries, and medical restrictions.

75. On March 23, 2016, Mr. Mathew was issued a letter by Tapia and Von Rudenborg of warning alleging failure to follow instructions and perform his duties when "On March 8, 2016, Mr. Mathew failed to do his duties as a Carrier, willfully walked slow, did not finger the mail between deliveries, took numerous breaks, and failed to follow instructions and a direct order."

76. On March 28, 2016, Mr. Mathew was issued a seven (7) day suspension.

77. On April 6, 2016, Von Rudenborg and Marshall watched over Mr. Mathew as he cased his route as a means of humiliation in front of the other carriers.

78. On June 28, 2016, Tapia and Von Rudenborg called Mr. Mathew in for a pre-disciplinary interview, in which he was asked about his attendance and absences.

79. Mr. Mathew responded that he had applied and had been approved to take intermittent FMLA due to his injures, and advised that he is in attendance so long as his health permits.

80. That same day, Mr. Mathew was issued yet another letter of warning from Von Rudenborg and Tapia for failure to be in regular attendance.

81. Mr. Mathew faced a campaign of harassment by Defendants due to his disability, age, race, national origin, and in retaliation for his EEO charges against the USPS, and the allegations contained therein against Tapia, Von Rudenborg and Marshall.

## CLAIMS FOR RELIEF

### COUNT ONE

*(Americans with Disabilities Act 42 U.S.C. §12112 et seq.)*

82. Plaintiff repeats and reasserts all allegations and claims as identified above and incorporates same as if fully set forth at length herein.

83. Plaintiff's knee and back injuries are conditions that that substantially limit one or more of Plaintiff's major life activities.

84. Plaintiff could perform the essential functions of his employment position, with accommodation.

85. Defendant and its agents had knowledge of Plaintiff's disability.

86. Plaintiff faced a hostile work environment and was discriminated against due to his disability.

87. The discrimination was so severe and pervasive that any reasonable person in Plaintiff's position would have found the working environment to be severe and pervasive based upon Plaintiff's known disability.

88. Although Defendant and its agents knew or should have known of the discrimination suffered by Plaintiff, discriminatory environment continued, and Defendant and its agents failed to take any corrective measures to stop the discrimination in violation of the *Americans with Disabilities Act 42 U.S.C. §12112 et seq.*

89. These illegal actions were committed by Plaintiff's supervisors, and as a direct result of his disability.

90. The conducted complained of would not have occurred but for Plaintiff's disability.

91. The foregoing actions on the part of Defendants and its agents constituted unlawful discrimination based upon Plaintiff's disability.

92. The foregoing actions were knowing, willful, and deliberate with a total lack of regard to Plaintiff and in complete disregard to the sensibilities and an abuse of authority of Defendant.

93. Defendants and its agents have engaged in behavior that violates the *Americans with Disabilities Act 42 U.S.C. §12112 et seq.* and have thereby irreparably caused injury and damage to Plaintiff.

## COUNT TWO

*(Age Discrimination in Employment Act- 29 U. S.C. 626(e), et seq.)*

94. Plaintiff repeats and reasserts all allegations and claims as identified above and incorporates same as if fully set forth at length herein.

95. At all times relevant Plaintiff was older than the age of 40 years old.

96. Plaintiff suffered discrimination and harassment at the hands of his supervisors for working at a slower pace than those employees who were younger than 40 years old.

97. The age based harassment and retaliation were so severe and pervasive that any reasonable person in Plaintiff's position would have found the working environment to be hostile and abusive.

98. Although the Defendants and its agents knew or should have known of the age harassment and retaliation suffered by Plaintiff, the abusive and hostile work environment

continued, and Defendants and its agents failed to take any corrective measures to stop the age based harassment in violation of *Age Discrimination in Employment Act- 29 U. S.C. 626(e), et seq*.

99. These illegal actions were committed by Plaintiff's supervisors, and as a direct result of his age. The conduct complained of would not have occurred but for Plaintiff's age.

100. The foregoing actions on the part of Defendants and its agents constituted unlawful discrimination based upon Plaintiff's age.

101. The foregoing actions were knowing, willful, and deliberate with a total lack of regard to Plaintiff and in complete disregard to the sensibilities and an abuse of authority by Defendants and its agents.

102. Defendants and its agents has engaged in behavior that violates the *Age Discrimination in Employment Act- 29 U. S.C. 626(e), et seq.* and has thereby irreparably injured Plaintiff.

## COUNT THREE

*(Title VII – 42 U.S.C. §2000e et seq. - Race Discrimination)*

*(United States Postal Service)*

103. Plaintiff repeats and reasserts all allegations and claims as identified above and incorporates same as if fully set forth at length herein.

104. The race based harassment was so severe and pervasive that any reasonable person in Plaintiff's position would have found the working environment to be hostile and abusive.

105. Although the Defendants and its agents knew or should have known of the race based harassment suffered by Plaintiff, the abusive and hostile work environment continued, and

Defendant failed to take any corrective measures to stop the race based harassment and retaliation in violation of *Title VII – 42 U.S.C. §2000e et seq.*

106. These illegal actions were committed by Plaintiff's supervisors, and as a direct result of his race as Asian (Indian). The conduct complained of would not have occurred but for the Plaintiff's race.

107. The foregoing actions on the part of Defendants and its agents constituted unlawful discrimination based upon Plaintiff's race.

108. The foregoing actions were knowing, willful, and deliberate with a total lack of regard to Plaintiff and in complete disregard to the sensibilities and an abuse of authority by Defendants and its agents.

109. Defendants and its agents has engaged in behavior that violates the *Title VII – 42 U.S.C. §2000e et seq.* and has thereby irreparably injured Plaintiff.

## COUNT FOUR

(*Title VII – 42 U.S.C. §2000e et seq. - National Origin Discrimination*)

110. Plaintiff repeats and reasserts all allegations and claims as identified above and incorporates same as if fully set forth at length herein.

111. The national origin based harassment was so severe and pervasive that any reasonable person in Plaintiff's position would have found the working environment to be hostile and abusive.

112. Although the Defendants and its agents knew or should have known of the national origin based harassment suffered by Plaintiff, the abusive and hostile work environment continued, and Defendant failed to take any corrective measures to stop the national origin based harassment and retaliation in violation of *Title VII – 42 U.S.C. §2000e et seq.*

113. These illegal actions were committed by Plaintiff's supervisors and as a direct result of his national origin (India). The conduct complained of would not have occurred but for the Plaintiff's national origin.

114. The foregoing actions on the part of Defendants and its agents constituted unlawful discrimination based upon Plaintiff's national origin.

115. The foregoing actions were knowing, willful, and deliberate with a total lack of regard to Plaintiff and in complete disregard to the sensibilities and an abuse of authority by Defendants and its agents.

116. Defendants and its agents has engaged in behavior that violates the *Title VII – 42 U.S.C. §2000e et seq.* and has thereby irreparably injured Plaintiff.

## COUNT FIVE

*(42 U.S.C. §12003, 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 633a(a) - Retaliation)*

117. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

118. Plaintiff is disabled, Asian (Indian), 60 years old, was born in India and is a member of a protected class under Title VII, Americans With Disabilities Act, and Age Discrimination in Employment Act.

119. By reasons of the facts and circumstances asserted above, Plaintiff notified his supervisor, members of upper management, as well as the USPS EEO department of his concerns about the hostile and abusive work environment he suffered at the hands of Defendants and its agents by filing a formal Complaint with the EEO Office.

120. As a direct result of his complaints that were verbal and in writing to EEO, Plaintiff began suffering a series of disciplinary actions and harassment due to his EEO Complaint.

121. As a result of Defendants and its agents retaliatory actions towards Plaintiff, he has suffered damages.

## COUNT SIX

(Rehabilitation Act – 29 U.S.C. §794.)

122. Plaintiff repeats and reasserts all allegations and claims as identified above and incorporates same as if fully set forth at length herein.

123. Plaintiff's knee and back injuries are conditions that that substantially limit one or more of Plaintiff's major life activities.

124. Plaintiff could perform the essential functions of his employment position, with accommodation.

125. Defendant had knowledge of Plaintiff's disability.

126. Plaintiff faced a hostile work environment and was discriminated against due to his disability.

127. The discrimination was so severe and pervasive that any reasonable person in Plaintiff's position would have found the working environment to be severe and pervasive based upon Plaintiff's known disability.

128. Although Defendants and its agents knew or should have known of the discrimination suffered by Plaintiff, discriminatory environment continued, and Defendant failed to take any corrective measures to stop the discrimination in violation of the *Rehabilitation Act, 29 U.S.C. §794*.

129. These illegal actions were committed by Plaintiff's supervisors, and as a direct result of his disability.

130. The conducted complained of would not have occurred but for Plaintiff's disability Defendants and its agents continued attempts to rehabilitate his condition.

131. The foregoing actions on the part of Defendants and its agents constituted unlawful discrimination based upon Plaintiff's disability.

132. As a result of the illegal and continuing course of conduct by Defendant described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity for prospective employment, and is incurring legal expenses and other expenses as a result of Defendant' actions.

133. The foregoing actions were knowing, willful, and deliberate with a total lack of regard to Plaintiff and in complete disregard to the sensibilities and an abuse of authority of Defendants and its agents.

134. Defendants and its agents have engaged in behavior that violates the *Rehabilitation Act, 29 U.S.C. §794,* and have thereby irreparably caused injury and damage to Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. Compensatory Damages for loss of pension, health insurance and other benefits, back pay, front pay, wages and rights, including lost economic advantage, emotional distress, for pain and suffering, pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 1981a, 42 U.S.C. §2000e-5, 29 U.S.C. §794.

b. Punitive Damages pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 1981a, 42 U.S.C. §2000e-5, 29 U.S.C. §794.

    c.   Attorney's Fees and Costs of Court pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 1981a, 42 U.S.C. §2000e-5, 29 U.S.C. §794.

    d.   Statutory Violations;

    e.   Other Equitable Relief;

    f.   Pre and Post Judgment Interest;

    g.   Reinstatement; and

    h.   Other injunctive relief.

MARK LAW FIRM, LLC
Attorneys for Plaintiff, Thomas Mathew

Dated: 1/27, 2017   By: _____
                                       JAMISON M. MARK, ESQ.

## DESIGNATION OF TRIAL COUNSEL

Trial Counsel is herby designated as Jamison M. Mark, Esq.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues triable by jury.

MARK LAW FIRM, LLC
Attorneys for Plaintiff, Thomas Mathew

Dated: 1/27, 2017   By: _____
                                       JAMISON M. MARK, ESQ.

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

I hereby certify that the matter in controversy is not the subject of any other action pending in any other court or pending arbitration proceeding. I further certify that I have no knowledge of any contemplated action or pending arbitration proceeding regarding the subject matter of this action, and I am not aware of any other parties who should be joined to this matter.

MARK LAW FIRM, LLC
Attorneys for Plaintiff, Thomas Mathew

Dated: \_\_\_\_1/27\_\_\_\_, 2017    By: _____
JAMISON M. MARK, ESQ.